NO. 07-04-0352-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



AUGUST 3, 2004



______________________________



TEDDY ROBINSON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE



_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 88-408,306; HONORABLE CECIL G. PURYEAR, JUDGE


_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

MEMORANDUM OPINION


 Teddy Robinson attempts to appeal the denial of a "Motion for New Trial/Time
Reduction" following his conviction for murder. Finding we have no jurisdiction, we will
dismiss.

 Appellant was found guilty of murder by a jury which also assessed punishment of
99 years confinement. Sentence was imposed December 7, 1988. No notice of appeal
was filed from that judgment. Appellant filed his "Motion for New Trial/Time Reduction" in
the trial court July 1, 2004. The motion complains of errors in his trial. The court denied
the motion the same day. He filed a notice of appeal from that order on July 12, 2004. 

 A timely notice of appeal is a prerequisite to a court of appeals' jurisdiction and in
the absence of jurisdiction it can take no action other than to dismiss the appeal. Slaton
v. State, 981 S.W.2d 208, 210 (Tex.Crim.App. 1998). A notice of appeal must be filed
within 30 days after the day sentence is imposed unless a timely motion for new trial is
filed, in which case appeal must be perfected within 90 days after the imposition of
sentence. Tex. R. App. P. 26.2(a). (1) A motion for new trial must be filed no later than 30
days after imposition of the sentence. Tex. R. App. P. 21.4. Appellant's motion, filed over
fifteen years after imposition of his sentence, fails to invoke this court's jurisdiction. 
Lacking jurisdiction over the appeal, we dismiss it.


 Per Curiam





Do not publish.
1. The same deadlines applied under former Rule 41(b)(1) applicable at the time of
appellant's conviction.



e judge of the trial court entered a judgment based upon the jury
verdict. On June 2, 2003, appellants gave notice of appeal from the judgment and from
certain findings contained in the judgment. On June 4, 2003, the attorney ad litem for the
minor children also filed a notice of appeal from the judgment, specifically contending that
the evidence before the jury established by clear and convincing evidence that appellants'
rights should be terminated and that the jury finding that their parental rights should not be
terminated was against the weight of the evidence. After conducting a hearing at which,
in addition to considering the record of the evidence produced at the jury trial, the trial judge
also heard testimony, he rendered the judgment giving rise to this appeal. 

Discussion Because appellants' first three points are so closely interrelated, we will discuss
them together. As is evident from the nature of appellants' points, the Texas Family Code
provides that a parent's rights may be terminated if they are guilty of the type of conduct
described in their points. See Tex. Fam. Code Ann. §161.001(D) & (E) (Vernon 2002). 
Because the termination of parental rights involves fundamental constitutional rights,
Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-13, 31 L.Ed.2d 551 (1972), it is
now axiomatic that the evidence supporting findings of such nature must be clear and
convincing. See In the Interest of G.M., 596 S.W.2d 846, 847 (Tex. 1980).

 The clear and convincing standard is an intermediate standard falling between the
preponderance standard of ordinary civil proceedings and the reasonable doubt standard
of criminal proceedings. Id. It requires a degree of proof that will produce in the mind of
the trier of fact a firm belief or conviction as to the truth of the allegations sought to be
proved. Id. It requires more proof than the preponderance of the evidence standard
required in civil cases but less than the reasonable doubt standard in criminal cases. Id. 
On the appeal of a fact finding made by clear and convincing evidence, we review the
record to determine if the trial court could reasonably find that the fact was highly probable,
i.e., whether the evidence was sufficient to produce in the mind of the factfinder a firm belief
or conviction as to the truth of the fact found by the judge. Amador v. Berrospe, 961
S.W.2d 205, 208 (Tex. App.-Houston [1st Dist.] 1996, writ denied).

 A party may appeal an associate judge's decision by filing a notice of appeal not
later than the third day after the date the party receives notice of the substance of the
associate judge's report. Tex. Fam. Code Ann. § 201.015 (Vernon 2002). If an appeal to
the referring court is filed by a party, any other party may file an appeal to the referring
court not later than the seventh day after the date the initial appeal is filed. Id. In such an
appeal, the reviewing judge may consider the record from the hearing before the associate
judge, including the charge and jury verdict. In addition, the parties may present witnesses
in a hearing de novo on the issues raised in the appeal. 

 In the proceeding reviewed by us, the trial judge elected to consider the record of
the jury trial and, in addition, received the testimony of live witnesses. Because of the
questions presented in this appeal, it is necessary to go into the pertinent testimony
considered by the judge in some detail.

 In the trial before the jury, the children had been removed from appellants' home
and they were seeking their return. At trial, Ginger admitted, albeit with a denial that she
was doing so at the time of her testimony, that she abused drugs to the extent that it
affected her ability to function in daily life and that she had done so while her minor children
were in her care. She also admitted that while she was abusing drugs, their emotional
well-being was endangered because of the lack of attention she gave her children and "just
the danger of drugs being in the home." Ginger further conceded that the children were
aware that she and her husband were abusing alcohol. She stated that during a period
when the children were temporarily removed by the court from her home, although ordered
by the court to do so, she did not participate in an in-patient drug treatment program. 
Ginger and her husband had engaged in fights in the presence of the children, and she had
taken refuge in a battered women's shelter because of physical abuse by her husband. 
Furthermore, she admitted she had left the children in John's care at a time when she
knew he was abusing alcohol. However, she averred that at the time of her jury trial
testimony, she and her husband were getting along, she was free of drugs and, although
she had figured out that her priorities had been "really messed up," she now knew her
priorities.

 John testified that he was an alcoholic. Although he averred that he was not doing
so at the time of his testimony, he admitted that he had been under the influence of alcohol
in the past while the children were in his care to the extent that it impaired his ability to take
care of them and put them at risk. He also admitted there had been physical violence
between him and his wife but, although the children had been present during verbal fights,
they had never been present when there was physical violence between him and Ginger. 
He knew that during the period when Ginger abused prescription drugs, the children had
been left with her. Additionally, he said that when he abused chemicals, he had put his
needs above those of the children. He admitted that when the children witnessed their
arguments, it made them feel insecure and "a little bit unstable." There was also testimony
produced at trial from various Child Protective Service (CPS) employees about appellants'
substance abuse periods and the failure to comply with CPS's directives to attend abuse
control and to conduct remedial and educational meetings.

 At the appeal hearing before the presiding trial judge, he heard the live testimony
of three witnesses, Diana Bartlett, James H. Reeves, and Susan Cummings. Bartlett was
a CPS Specialist and the Neeley family case had been transferred to her to ensure that
they were able to complete any services requested in the order issued by the associate
judge, primarily the portion related to the drug screens. She offered to do a cheek swab
drug screen, but the Neeleys were not comfortable with that, told her they thought they
were only supposed to participate in a urinalysis, and wanted to contact their attorney. The
maternal grandmother of the children advised them not to submit to tests until they talked
to their attorney. She later learned that a drug screen had been completed on John at the
Juvenile Probation Office in Gray County. The Neeleys never returned to her. She also
averred that the children had been doing well in their relative placement with a maternal
great-aunt and uncle.

 James H. Reeves, a juvenile probation and TYC parole officer in Gray County, 
testified that as a part of his duties, he gave drug screens for jobs and "things like that" and
identified the type of report form they used. He averred that John came in and requested
a drug test, stating that he had a job interview coming up for which he would need a drug
test certification. Reeves said John supplied a urine sample, which test result showed John
had a "problem with meth and morphine." He also stated that it was unusual for a test
result to show positive for morphine. John asked for a test result form, which showed
positive results for morphine and methamphetamine, and it was completed and signed by
both of them. They did not test for alcohol. John left with the form. Bartlett later contacted
Reeves and asked him if the test results were all negative and he told her they were not. 
When asked on cross-examination why he remembered John's test, Reeves stated that
John's was the only outside test given in a three-week period and that the test was positive
for morphine.

 The next witness called was Susan Cummings, who was "Ginny's friend and John's
cousin." When asked if she had supplied morphine to either Ginger or John after the April
17, 2003 trial date, she was instructed about her right not to incriminate herself and after
having been so instructed, she said she wanted to claim her right. She said that she saw
the appellants on "almost a daily basis." When queried if in her interaction with the Neeleys
since the trial date she had made observations that it would not be in the best interest of
the children to be placed with them, she answered "yes." She had also observed
appellants use drugs in her presence. She could not say exactly how many times, but it
was more than five.

 After reviewing the evidence considered by the judge, we are satisfied it is sufficient
to produce in the mind of the trial judge a firm belief or conviction sufficient to justify his
findings supporting his termination of appellants' parental rights. Otherwise stated, the
evidence before the judge was clear and convincing. Appellants' first three points are
overruled. 

 In their fourth point, as we noted above, appellants contend that the trial court
abused its discretion by "ignoring" the jury's verdict that termination of their parental rights
was not in the children's best interest. As we understand it, the gist of appellants' argument
under this point is that in the guardian ad litem's notice of appeal, he did not specifically
include a challenge to the jury's finding that termination of appellants' parental rights was
not in the children's best interest. 

 Supporting this proposition, he points to the established rule that a notice of appeal
restarts the process only "to the extent of the challenged findings" and reasons that being
so, the trial judge erred in conducting a full blown hearing as to the underlying questions
whether appellants had knowingly placed or knowingly allowed the children to remain in
conditions or surroundings that endangered the physical or emotional well-being of the
children or engaged in conduct or knowingly placed the children with persons who engaged
in conduct which endangered their physical or emotional well-being.

 In the ad litem's notice of appeal, he specifically argued that the evidence before the
jury established by clear and convincing evidence that appellants' parental rights should
be terminated and that the jury verdict was against the weight of that evidence. That
contention was sufficient to trigger the trial judge's right to review that evidence and, as his
review of that evidence was de novo under the statute, to hear additional evidence in order
to determine whether the best interest of the children required termination of the parental
rights. Moreover, in appellants' notice of appeal, they specifically challenged all the factual
findings entered by the associate judge in his order. Under this record, the trial judge acted
within his authority to conduct the appeal hearing in the manner he did. Appellants' fourth
point in overruled.

 In sum, all of appellants' points are overruled and the judgment of the trial court is
affirmed. 



 John T. Boyd

 Senior Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).